UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff,<br><br>v.<br><br>PAVESTONE, LLC,<br><br>Defendant. | Case No. 1:24-cv-11276 |

**CONSENT DECREE**

WHEREAS, Pavestone, LLC ("Pavestone"), operates a concrete products facility at 18 Cowan Drive, Middleborough, Massachusetts (the "Facility");

WHEREAS, the Commonwealth of Massachusetts ("Commonwealth"), acting through the Office of the Attorney General ("Attorney General's Office"), alleges in its Complaint that Pavestone has discharged industrial stormwater from the Facility into wetlands and waterways adjacent to the Sippican River ("Sippican River Wetlands") without complying with its federal Multi-Sector General Permit issued by the United States Environmental Protection Agency ("Stormwater Permit"), in violation of the Federal Clean Water Act, 33 U.S.C. §§ 1251–1387 (the "Clean Water Act" or the "Act");

WHEREAS, by letter dated March 28, 2023, the Attorney General's Office provided notice of the alleged violations and of the Attorney General's Office's intention to file suit against Pavestone ("Notice") to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Massachusetts Department of

1

Environmental Protection; and Pavestone, pursuant to Section 505 of the Federal Clean Water Act, 33 U.S.C. § 1365;

WHEREAS, following receipt of the March 28, 2023, Notice, and without admitting the Commonwealth's allegations or liability as alleged by the Commonwealth, Pavestone undertook a number of actions, including preparing a Stormwater Pollution Prevention Plan ("SWPPP") and submitting a Notice of Intent ("NOI") to be covered by the Stormwater Permit;

WHEREAS, Pavestone anticipates that these steps, together with implementation measures set forth herein and in the SWPPP for the Facility, will enable it to comply with the allegedly applicable requirements of the Clean Water Act;

WHEREAS, today the Attorney General filed a complaint against Pavestone in the United States District Court for the District of Massachusetts (the "Complaint");

WHEREAS, Pavestone does not admit any liability arising out of the facts or laws referenced or alleged in the Notice or Complaint;

WHEREAS, the Commonwealth and Pavestone (collectively, the "Parties") have reached an agreement to fully resolve this dispute; and

WHEREAS, this Consent Decree shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW, THEREFORE, based on the Joint Motion of the Parties for Entry of this Consent Decree, and before taking any testimony and without the adjudication of any issues of fact or law, it is ADJUDGED, ORDERED, AND DECREED, as follows:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action

pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States). Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1).

2.  The Complaint alleges facts that, if proven, would constitute good and sufficient grounds for the relief set forth in this Consent Decree.

### III. EFFECTIVE DATE

3.  The effective date of this Consent Decree shall be when the Court enters the Consent Decree on the docket ("Effective Date").

### IV. PARTIES BOUND

4.  This Consent Decree shall constitute a binding agreement between the Parties, and Pavestone consents to its entry as a final judgment by the Court and waives all rights of appeal upon its entry on the docket. If the Court declines to enter this Consent Decree on any ground except one related to form, this Consent Decree is voidable at the option of either party within fourteen (14) days of the Court's decision. If, on the other hand, the Court determines that substantive modifications to this Consent Decree are necessary prior to the Court's entry of it, the Parties shall enter into good faith negotiations to discuss the modifications, and this Consent Decree shall be void unless the Commonwealth and Pavestone agree otherwise in writing within fourteen (14) days of the Court's decision.

5.  The provisions of this Consent Decree shall apply to and bind Defendant and any other persons bound by the order pursuant to Fed. R. Civ. P. 65(d)(2).

6.  Pavestone shall provide a true copy of this Consent Decree to all of its managers, directors, officers, supervisors, employees, and agents whose duties might include compliance

with any provision of this Consent Decree. Pavestone shall also provide a copy of this Consent Decree to any contractor retained by it to perform work required under this Consent Decree and shall condition any such contract, entered into after the Effective Date of the Consent Decree, on the contractor's performance of the work in compliance with the terms of this Consent Decree. For any such contract entered into prior to the Effective Date, Pavestone shall ensure that the contractor performs its work in compliance with the terms of this Consent Decree.

7. For three (3) years following the Effective Date, or until Pavestone has terminated the Stormwater Permit in accordance with Section 1.4 of the Stormwater Permit, whichever date is earlier (this term is hereinafter referred to as the "Monitoring Period"), Pavestone shall provide written notice of any prospective change or transfer in ownership of its business, together with a copy of the proposed written change or transfer agreement, to the Attorney General in accordance with Section XIII (Notices) of this Consent Decree. At least thirty (30) days prior to any such change or transfer of ownership, management, or operation of the Facility that occurs within the Monitoring Period, Pavestone shall provide a copy of this Consent Decree to the proposed transferee or new manager or operator. No change or transfer in ownership, management, or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the Defendant or any person bound by this Consent Decree pursuant to Fed. R. Civ. P. 65(d)(2) of any obligation under this Consent Decree, unless:

    a. the transferee agrees, in writing, to undertake any outstanding obligations required by Section V (Payments), Section VI (Injunctive Relief), and Section VII (Facility Access and Submission of Records) and to be added as a Defendant or substituted for the Defendant as a Party under the Consent

          Decree and thus assume the obligations, rights, and benefits of, and be bound by, its terms;

    b.    the Commonwealth agrees to consent, in writing, to relieve the Defendant of its obligations under the Consent Decree; and

    c.    the transferee becomes a party under this Consent Decree pursuant to Section XV (Modification).

Any attempt to change or transfer ownership, management, or operation of the Facility without complying with this Paragraph shall constitute a violation of this Consent Decree.

8.    Pavestone shall not violate this Consent Decree, and Pavestone shall not allow its officers, directors, agents, servants, attorneys-in-fact, employees, successors, assigns, or contractors to violate this Consent Decree. In any action to enforce this Consent Decree, Pavestone shall not raise as a defense the failure by any of Pavestone's managers, directors, officers, supervisors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

9.    In addition to any relief specifically provided in this Consent Decree, Pavestone understands and agrees that violations of this Consent Decree may be punishable by contempt pursuant to an appropriate civil contempt proceeding.

## V. PAYMENTS

10.    Within fifteen (15) days of the Effective Date, Pavestone shall pay to <u>Buzzards Bay Coalition, Inc.,</u> the sum of sixty thousand dollars ($60,000) for projects to benefit water quality in the Buzzard's Bay watershed. Evidence of Pavestone's payment to <u>Buzzards Bay Coalition, Inc.,</u> shall be contemporaneously provided by Pavestone to the Commonwealth

5

pursuant to Section XIII (Notices). Payments should be made by check made out to <u>Buzzards Bay Coalition, Inc.,</u> and sent to:

> Buzzards Bay Coalition, Inc.
> 114 Front St., New Bedford, MA 02740
> Reference: Commonwealth v. Pavestone – Payment

11.     Within fifteen (15) days of the Effective Date, Pavestone shall reimburse the Attorney General's Office in the amount of thirty thousand dollars ($30,000) to defray the Attorney General's Office's costs, including attorney fees, incurred in connection with its work on this matter. Payments should be made by check to the Commonwealth of Massachusetts, and sent to:

> Environmental Protection Division
> Office of the Attorney General
> One Ashburton Place, 18th Floor
> Boston, MA 02108
> Attention: Carly Pusateri, Managing Administrative Assistant/Paralegal
> Reference: EPD, Commonwealth v. Pavestone – Costs

## VI. INJUCTIVE RELIEF

12.     Pavestone agrees to operate the Facility in compliance with the applicable requirements of the currently applicable Stormwater Permit, including any amendments thereto or reissuances thereof, and with the Clean Water Act. Specifically, Pavestone shall:

   a. control stormwater at the Facility to "minimize" pollutants, that is, "to reduce and/or eliminate to the extent achievable using stormwater control measures (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice," pursuant to Stormwater Permit Section 2.0;

   b. within two (2) months of the Effective Date, Pavestone shall eliminate all unauthorized non-stormwater discharges from the Facility; and

  c. within two (2) months of the Effective Date, Pavestone shall update its SWPPP, NOI, and all other documents related to the Stormwater Permit to the extent necessary to accurately depict Facility site boundaries and to accurately list all outfalls where stormwater discharges from the Facility.

### VII. FACILITY ACCESS AND SUBMISSION OF RECORDS

13. Pavestone shall permit the Attorney General's Office to visit the Facility during normal daylight business hours once per calendar year during the Monitoring Period, provided that the Attorney General's Office provide at least twenty-four (24) hours of prior notice. During any Facility visit, the Attorney General's Office shall have access to and permission to copy any documentation required to be maintained pursuant to the Stormwater Permit and may collect samples and take photos at the Facility.

14. During the Monitoring Period, Pavestone shall provide the Attorney General's Office with the following documents in accordance with Section XIII (Notices), below:

  a. copies of all documents Pavestone submits to EPA, the Commonwealth, and/or the Town of Middleborough concerning Pavestone's stormwater controls or the quality of Pavestone's Stormwater Discharges Associated with Industrial Activity, including but not limited to all documents and reports submitted as required by the Stormwater Permit. Such documents and reports shall be sent to the Attorney General's Office within ten (10) business days of Pavestone's submission of these documents to the relevant entity;

    b.    copies of all documents and communications Pavestone submits to EPA concerning Corrective Action or Additional Implementation Measures taken at the Facility, within ten (10) business days of submitting them to EPA;

    c.    all maintenance records for the Facility's stormwater pollution control systems. Maintenance records, within ten (10) business days of Pavestone's receipt of a written request by the Attorney General's Office;

    d.    written notice of any changes made to any of Pavestone's stormwater control measures that are described in the SWPPP pursuant to Stormwater Permit Section 6.2.4, within ten (10) business days of Pavestone's receipt of a written request by the Attorney General's Office;

    e.    written notice of any changes made to Pavestone's stormwater control measures pursuant to Stormwater Permit Section 6.3, within ten (10) business days of Pavestone's receipt of a written request by the Attorney General's Office;

    f.    current copies of Pavestone's SWPPP, within ten (10) business days of receipt of a written request by the Attorney General's Office; and

    g.    Discharge Monitoring Reports and supporting laboratory reports and analytical results of stormwater sampling performed by or for Pavestone, within ten (10) business days of submitting the Discharge Monitoring Reports to EPA.

15.    Any information provided by Pavestone may be used by the Commonwealth in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

16.     The Consent Decree in no way limits or affects any right of entry and inspection or any right to obtain information held by the Commonwealth or any of its branches, departments, agencies, or offices pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Pavestone to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## VIII.  INTERESTS AND COLLECTIONS

17.     If any payment required pursuant to this Consent Decree is late or not made, Pavestone shall pay interest on any overdue amount for the period of such nonpayment at the rate of twelve percent (12%) per annum computed monthly and shall pay all reasonable expenses associated with collection by the Commonwealth of the unpaid amounts and interest for any period of nonpayment after the payment obligation becomes due, including reasonable attorney fees.

## IX. EFFECT OF CONSENT DECREE

18.     Upon compliance by Pavestone with the requirements of this Consent Decree, (a) this Consent Decree shall fully resolve Pavestone's liability and the liability for all persons bound by this Consent Decree pursuant to Fed. R. Civ. P. 65(d)(2) for the specific legal claims alleged against Pavestone in the Notice and Complaint; and (b) the Commonwealth shall fully release Pavestone and all persons bound by this Consent Decree pursuant to Fed. R. Civ. P. 65(d)(2) from liability for the specific legal claims alleged against it in the Notice and Complaint.

19.     Nothing in this Consent Decree (a) shall bar any action by the Commonwealth on any legal claim not specifically pleaded in the Complaint or for any violations not revealed to the Commonwealth; (b) shall be deemed to excuse non-compliance by Pavestone, or any of the

persons or entities otherwise bound by this Consent Decree with any law or regulation; or (c) shall preclude a separate or ancillary action by the Commonwealth to enforce the terms of this Consent Decree or any permit or other approval issued by the Massachusetts Department of Environmental Protection or EPA relative to the Facility.

20. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Pavestone is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Pavestone's compliance with this Consent Decree shall not be a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The Attorney General's Office does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Pavestone's compliance with any aspect of this Consent Decree will result in compliance with provisions of any federal, state, or local law, regulation, or permit.

21. Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a party to this Consent Decree.

## XII. MISCELLANEOUS

22. Pavestone understands and agrees that, pursuant to 11 U.S.C. § 523(a)(7), the costs or sums that Pavestone may be required to pay under this Consent Decree are not subject to discharge in any bankruptcy.

23. Pavestone shall pay all expenses, including reasonable attorney fees and costs, incurred by the Commonwealth in the enforcement of this Consent Decree, consistent with the scope of 33 U.S.C. § 1365(d). If the parties cannot agree on these expenses, either Party may submit the matter to the Court for resolution in accordance with 33 U.S.C. § 1365(d).

24. Nothing in this Consent Decree shall prevent Pavestone from taking any action otherwise required by law.

25. The titles in this Consent Decree have no independent legal significance and are used merely for the convenience of the parties.

26. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business on the next Business Day.

27. Pavestone is responsible for complying with this Consent Decree and is liable for violations of this Consent Decree.

28. Signature of the parties transmitted by scanning and email are binding.

## XIII. NOTICES

29. Unless otherwise specified in this Consent Decree, notices and submissions required by this Decree shall be made in writing by email to the following addresses:

>  For the Attorney General's Office and the Commonwealth:
>
>  Helen Yurchenco, Assistant Attorney General
>  Environmental Protection Division
>  Office of the Attorney General
>  One Ashburton Place, 18th Floor
>  Boston, MA 02108
>  Helen.Yurchenco@mass.gov
>
>  Muhammad Diallo, Federal Enforcement Case Coordinator
>  Environmental Protection Division
>  Office of the Attorney General
>  One Ashburton Place, 18th Floor
>  Boston, MA 02108
>  Muhammad.Diallo@mass.gov
>
>  For Pavestone:
>
>  Pavestone, LLC
>  5 Concourse Parkway

        Suite 1900
        Atlanta, Georgia 30328
        Attention: Legal Department

        With a copy to:
        Stephen E. O'Day, Esq.
        Smith, Gambrell & Russell, LLP
        1105 West Peachtree Street NE, Suite 1000
        Atlanta, Georgia 30309
        soday@sgrlaw.com

or, to such other place or to the attention of such other individual as a party may from time to time designate by written notice to the other parties to this Consent Decree.

## XIV. INTEGRATION

30.    Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XV. MODIFICATION

31.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by the parties. Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only by written approval of the parties and the approval of the Court. The Commonwealth's decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph. Three months after the Commonwealth receives Notice that Pavestone has terminated the Stormwater Permit in accordance with Section 1.4 of the Stormwater Permit, and provided there are no pending enforcement actions related to this Consent Decree or any other outstanding reasonable dispute

SGR/70317625.1

brought in good faith by the Commonwealth over Pavestone's compliance with this Consent Decree, Pavestone's obligations under this Consent Decree shall terminate.

## XVI. AUTHORITY OF SIGNATORY

32. The person signing this Consent Decree on behalf of Pavestone acknowledges: (a) that they have personally read and understand each of the numbered Paragraphs of this Consent Decree, including any Appendices attached to it; (b) that they are authorized to sign and bind Pavestone to the terms of this Consent Decree, and (c) that, to the extent necessary, Pavestone's managers, directors, officers, and shareholders have consented to Pavestone entering this Consent Decree and to its entry as a Final Judgment.

## XVII. TERM AND RETENTION OF JURISDICTION

33. The term of this Consent Decree shall be the duration of the Monitoring Period. During the term, the Court shall retain jurisdiction over this case for purposes of resolving disputes that arise under this Consent Decree, entering orders modifying this Consent Decree, or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

34. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a Final Judgment of the Court.

Case 1:24-cv-11276-RGS   Document 2-1   Filed 05/14/24   Page 14 of 14

OFFICE OF THE ATTORNEY GENERAL
ANDREA JOY CAMPBELL, ATTORNEY GENERAL

By: _____  Date: May 14, 2024
Helen Yurchenco
Assistant Attorney General
Environmental Protection Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
617-963-2507
Helen.Yurchenco@mass.gov

PAVESTONE, LLC

By: _____  Date: 04-22-24
Nick Ivezaj
General Counsel
5 Concourse Parkway, Suite 1900
Atlanta, Georgia 30328

IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.

By the Court:

_____

United States District Court

Dated: _____

14

SGR/70317625.1